IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BARTELLO, | : | CIVIL ACTION NO. 4:13-CV-1340 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| CITY OF SUNBURY and | : | |
| DAVID PERSING, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    BACKGROUND.

On April 15, 2013, Plaintiff Joseph Bartello, an elected member of Sunbury City Council, filed, through counsel, this instant civil rights action, pursuant to 42 U.S.C. § 1983, in the Court of Common Pleas of Northumberland County, Pennsylvania. Plaintiff also raised Pennsylvania state law claims. On May 15, 2013, Defendants Sunbury City, a Pennsylvania third class city, and David Persing, elected Mayor of Sunbury City, filed a Notice of Removal and removed this case to this federal court. (Doc. 1). Defendants then filed a Motion to Dismiss Plaintiff's original Complaint on May 22, 2013. (Doc. 2). Plaintiff filed his First Amended Complaint in response to Defendants' Motion. (Doc. 4). Plaintiff attached one Exhibit to his amended pleading, Doc. 4-1. As such, Defendants' Doc. 2 Motion to Dismiss was deemed moot. (Doc. 6). On July 1, 2013, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). **(Doc. 5)**. Defendants' Motion has been briefed and it is ripe for disposition. (Docs. 7 & 8).

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and §1343, and it can exercise supplemental jurisdiction over Plaintiff 's state law claims under 28 U.S.C. §1367.

In his Amended Complaint, Plaintiff alleges that on April 8, 2013, Sunbury City Council held a public meeting and Defendant Persing presided over it. The agenda for the meeting provided that an Audience Comment would be permitted at the conclusion of the meeting. Plaintiff avers that Sunbury City Council and Defendant Persing conducted all of their business and decided official actions before the Audience Comment was held.

In Count I of his Amended Complaint, Plaintiff asserts that Defendants violated the Pennsylvania Sunshine Act ("PSA"), 65 Pa.C.S.A. §§ 701, *et seq*. Plaintiff specifically alleges that "at no time prior to taking official action did Persing call for public comment" and that that "Persing has violated the [PSA] by failing to provide a reasonable opportunity for public comment prior to taking official action." (Doc. 4, ¶'s 15-16). Thus, Plaintiff contends that the official action taken at the April 8, 2013 meeting is voidable. (*Id*., ¶ 17).

Plaintiff further alleges in Count I that on April 9, 2013, Defendant Persing issued a Memo to Council Members and "called for a meeting of [the Mayor and] three counsel (sic) members [on April 17, 2013] to discuss permits surrounding the former Celotex site." (*Id*., ¶ 18). Plaintiff attached a copy of Defendant Persing's Memo as Exhibit 1 to his Amended Complaint, Doc. 4-1. Plaintiff basically alleges that Defendant Persing willfully violated the PSA by scheduling a closed private meeting to discuss agency business regarding the Celotex property without advertisement and public notice. Plaintiff avers that "the meeting is a prearranged gather of a quorum of the council" and was to be held "for the purpsoe of

2

discussion of agency business."  (*Id.*,  ¶'s 20-21).

Plaintiff seeks declaratory relief in Count I as well as an order directing Defendants to pay his attorney's fees.

In Count II of his Amended Complaint, Plaintiff alleges Defendant Persing violated the Pennsylvania Third Class City Code, 53 P.S. 35701, 35901, and 36205,[1] and the Pennsylvania Right to Know Law ("RTKL"), 65 P.S. 67.701, and he seeks Declaratory Judgment that Persing violated the Third Class City Code, the Pennsylvania Constitution and the RTKL.  (Doc. 4, pp. 4-7).  Plaintiff also alleges that Defendant Persing initiated an investigation of him and that Persing threatened council members with legal action if they exercised their right to speak on matters of public concern.  (*Id.*, ¶'s 33-34).  Plaintiff cites to the Ex. 1 Persing Memo.  Plaintiff alleges that Persing had no power to conduct an investigation of him and to take legal action against council, and that Persing was violating  the Third Class City Code and the Pennsylvania Constitution. Plaintiff also alleged that Persing ordered, *sans* authority, him to surrender his city issued computer to the police or face prosecution, and that Persing was going to allow third parties to inspect his computer.   Additionally, Plaintiff avers that Persing violated the RTKL by ordering access to his city issued computer.  (*Id.*, ¶'s 35-44).

Further, in Count II, Plaintiff contends that he is entitled to relief under the Pennsylvania Declaratory Judgment Act, 42 Pa.C.S.A. §7533, since he is interested under legal relations affected by the Third Class City Code and  the RTKL.  (Doc. 4, p. 6).

---

[1]Plaintiff cites to the Pennsylvania Third Class City Code as both "53 P.S." and "35 P.S." (Doc. 4, pp. 4-5).  The correct citation for the Third Class City Code is 53 P.S.

Plaintiff seeks declaratory relief in Count II as well as an order directing Defendant Persing to pay his attorney's fees.

In Count III of his Amended Complaint, Plaintiff raises First Amendment claims under the United States Constitution against Defendant Persing, under §1983, alleging that Persing instituted an illegal investigation into him in retaliation due to his exercising of his free speech right at the April 8, 2013 public meeting by "indicating his belief that there are code violations with respect to the Celotex property." Plaintiff alleges that "Persing has imposed upon the members of the council a content-based, prior restraint on political speech under threat of legal action." (*Id.*, ¶'s 52-55). Thus, Plaintiff asserts First Amendment retaliation and prior restraint claims against Defendant Persing in Count III.

Plaintiff seeks declaratory and injunctive relief in Count III as well as compensatory and punitive damages against Defendant Persing.[2] Plaintiff also seeks an order directing Defendant Persing to pay his attorney's fees. (Doc. 4, pp. 7-8).

In his final Count IV of his Amended Complaint, Plaintiff raises a Fourth Amendment unreasonable search and seizure claim under the United States Constitution against Defendant

---

[2]Plaintiff does not state in his Amended Complaint if he is suing Defendant Persing in both his individual and his official capacities. To the extent that Plaintiff seeks monetary damages (*i.e.*, both compensatory and punitive) from Defendant Persing, he can only sue the state actor Defendant in his individual or personal capacity. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential). Thus, we will recommend that Plaintiff's damages claims against Defendant Persing in his official capacity be dismissed with prejudice. We find that it would be futile for the Court to allow Plaintiff to amend his damages claims against Defendant Persing in his official capacity. *See Will v. Michigan Dept. of State Police*, *supra.*

Persing, under §1983, alleging that Persing violated his constitutional rights when Persing ordered him to return his city owned computer since, as an elected official, he had a reasonable expectation of privacy in the computer. (Doc. 4, p. 8). Plaintiff seeks declaratory and injunctive relief in Count IV as well as compensatory and punitive damages against Defendant Perisng. Plaintiff also seeks an order directing Defendant Persing to pay his attorney's fees. (Doc. 4, pp. 8-9).

## II. STANDARDS OF REVIEW.

### A. MOTION TO DISMISS

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are

sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## B. SECTION 1983 STANDARD

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements:  (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights.  Rather, it is a means to redress violations of federal law by state actors.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).  *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon

a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights.")(citing *Rode, supra)*.

## III. DISCUSSION.

At the outset, Plaintiff has agreed to voluntarily dismiss Count IV of his Amended Complaint, namely his Fourth Amendment illegal search and seizure claim against Defendant Persing, as well as his claims under the Pennsylvania Constitution.[3] Plaintiff also states that he

_____

[3]As Defendants recognize (Doc. 7, p. 9), the law is clear that any claims for damages that Plaintiff was making under the Pennsylvania Constitution would be subject to dismissal with prejudice as a matter of law. *See Moeller v. Bradford Co.*, 444 F. Supp. 2d 316, 327 n. 13 (M.D.

has not asserted a constitutional claim against Defendant Sunbury City under *Monell*.[4] (Doc. 8, pp. 5 & 7). As such, we will recommend that the Court dismiss with prejudice Count IV of Plaintiff's Amended Complaint as well as Plaintiff's claims under the Pennsylvania Constitution. We also find that Plaintiff's remaining constitutional claim raised in Count III is only asserted against Defendant Persing. Further, as noted above, we find that Plaintiff's constitutional claims in Count III seeking money damages against Defendant Persing (Doc. 4, p. 8), to the extent it does so in Persing's official capacity, should be dismissed with prejudice. *See Van Tassel v. Lawrence County Domestic Relations Section,* 659 F.Supp.2d 672, 696 (W.D. Pa. 2009); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010); *Gale v. Stori*, 608 F.Supp. 2d 629, 636 (E.D. Pa. 2009).

Thus, we find that Plaintiff raises only a state law PSA claim against Defendant Sunbury City in Count I. We do not find that Plaintiff's Count II, state law Third Class City Code and RTKL claims, is raised against Defendant Sunbury City since this Count only mentions Defendant Persing. (Doc. 4, pp. 4-7). Plaintiff's remaining claims against Defendant Persing are his Count I, state law PSA claim, his Count II, state law Third Class City Code and RTKL claims,

---

Pa. 2011)("Pennsylvania has no statutory equivalent to 42 U.S.C. § 1983, which provides a private right of action for a federal constitutional violation.")(citations omitted).

[4]Plaintiff states that he has not attempted to state a *Monell* claim against Defendant Sunbury City in his Amended Complaint. (Doc. 8, p. 6). We note Plaintiff could only state a constitutional claim against Defendant Sunbury City under *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since Defendant Sunbury City is a municipal agency, the standards annunciated in *Monell* would apply to it. *See Malles v. Lehigh County*, 639 F.Supp.2d 566 (E.D. Pa. 2009); *Spiess v. Pocono Mountain Regional Police Department*, 2010 WL 2985959, *7-*8. We agree with Plaintiff and find that he has not stated a constitutional claim under *Monell* against Defendant Sunbury City.

and his Count III, First Amendment claims under §1983.

Insofar as Plaintiff seeks declaratory judgment in his §1983 claim raised in Count III of his Amended Complaint, and requests the Court to declare that Defendant Persing violated his constitutional rights under the First Amendment due to the above stated alleged past actions of Persing, Doc. 4, p. 7, we will recommend that this request for relief be dismissed with prejudice.

Plaintiff asks the Court to enter Judgment " Declaring that Persing has violated [his] rights under the First Amendment ... ." (Doc. 4, p. 7, WHEREFORE Clause, ¶ A). Plaintiff lacks standing to have the Court declare the past conduct of Defendant Persing unconstitutional.

In *Blakeney v. Marsico*, 340 Fed.Appx. 778, 780 (3d Cir. 2009), the Third Circuit Court stated:

> To satisfy the standing and "case or controversy" requirements of Article III, a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir.2003) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). Here, Blakeney seeks a declaration merely that defendants' "acts" and "policies" violate the United States and Pennsylvania Constitutions. He does not allege that he will be subjected to that alleged conduct in the future. Moreover, even if defendants violated Blakeney's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Brown v. Fauver,* 819 F.2d 395, 399-400 (3d Cir.1987) (directing District Court to dismiss prisoner's Section 1983 claim for prospective relief where appellant "has done nothing more than allege past exposure to unconstitutional state action").

Plaintiff fails to state that he will be subjected to the alleged violation of his First Amendment rights by Defendant Persing in the future. Moreover, even if Defendant Persing

violated Plaintiff's rights in the past as he alleges, he is not entitled to a declaration to that effect. *See Blakeney, supra.* Therefore, we will recommend that Plaintiff's request for declaratory relief in his §1983 claim raised in Count III of his Amended Complaint be dismissed with prejudice. Based on the above discussion, we find that it would be futile for the Court to allow Plaintiff to amend his Amended Complaint with respect to his stated request for declaratory relief. *See Blakeney, supra.*

In his Amended Complaint, Plaintiff asserts a First Amendment retaliation claim against Defendant Persing. As mentioned, Plaintiff alleges that Defendant Persing instituted an illegal investigation of him in retaliation to his exercising of his free speech right at the April 8, 2013 public meeting where Plaintiff stated "his belief that there are code violations with respect to the Celotex property." Plaintiff alleges that "Persing has imposed upon the members of the council a content-based, prior restraint on political speech under threat of legal action." (Doc. 4, ¶'s 52-55).

Defendant Persing argues that Plaintiff's First Amendment retaliation claim against him should be dismissed since Plaintiff is a public employee and he fails to meet the required three step test to assert such a claim. Defendant Persing states that Plaintiff was speaking at the April 8, 2013 meeting as a councilman pursuant to his official duties and, that the sole purposes of the investigation he (Persing) instituted "was to address the accusations and the misinformation regarding the Celotex property." (Doc. 7, pp. 10-11). Thus, Defendant Persing contends that Plaintiff's First Amendment claim fails as a matter of law.

Further, Defendant Persing states that insofar as Plaintiff raises a First Amendment claim

under the doctrine of prior restraint it also fails. Defendants cite to a three-part test with respect to prior restraint claims stated by the Court in *Dowling v. Township of Woodbridge*, 2005 US Dist LEXIS 38630 (USDC N.J. 2005). Defendant Persing states that Plaintiff was speaking as a public employee at the relevant time and that the government may impose reasonable restrictions on the time, place or manner of protected speech. Defendant Persing states that he "was not attempting to quiet the Plaintiff but wanted to ensure there was an official timeline of events provided to city council. This was done in an effort to quell the accusations and misinformation passed onto the public. Plaintiff would have the opportunity to speak on the issue after completion of the timeline." (Doc. 7, pp. 11-12).

In his Brief in Opposition (Doc. 8, pp. 8-9), Plaintiff argues that as an elected council member, he expressed his opinion at the April 8, 2013 public meeting of the City Council that there were code violations at the Celotex property and that such violations were a matter of public safety and concern. Thus, Plaintiff states that his speech was protected under the First Amendment.

Plaintiff then states that on April 9, 2013, he "was subjected to an illegal investigation by Defendant Persing and to a gag order" due to his (Plaintiff's) earlier expressions of his opinions about the code violations on the Celotex property. Plaintiff cites to Defendant Persing's Memo dated April 9, 2013, attached as Exhibit 1 to his Amended Complaint, and states that the Memo "appears to directly reference Plaintiff's comments when it refers to 'accusations and misinformation.'" Plaintiff also states that Defendant Persing's Memo makes reference to examination of complaints against a councilman. We consider Plaintiff's Exhibit 1 for present

purposes since the court can consider a document integral to or explicitly relied upon in the Complaint and since Plaintiff's claims are based, in part, on Defendant Persing's Memo. *See Pension Benefit Guarantee Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993); *Reisinger, supra.* Additionally, Plaintiff states during the litigation of his instant civil rights case, "Defendants have further retaliated against [him] by removing him from his former supervisory position over the City's Code Office." (*Id.*). To the extent Plaintiff is attempting to re-draft his Amended Complaint in his opposition brief and to add new allegations regarding his First Amendment retaliation claim, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss. *Ex rel. Zimmerman,* 836 F.2d at 181." *Sung Tran v. Delavau, LLC,* 2008 WL 2051992, *11 (E.D. Pa. 5-13-08).

Plaintiff concludes that "[g]iven the totality of the alleged circumstances, [he] had plead sufficient facts concerning the nexus between his speech and retaliatory action." (*Id.*). Thus, Plaintiff states that the Court should deny Defendants' Motion to Dismiss his First Amendment retaliation claim.

Plaintiff (Doc. 8, p. 10) agrees with Defendants that insofar as he asserts a First Amendment claim under the doctrine of prior restraint it is subject to the three-part test identified by Defendants at Doc. 7, pp. 11-12, namely, justification without reference to content, narrow tailoring and significant government interest, and ample alternative channels. However, Plaintiff concludes that he has met the three prong test regarding his First Amendment prior restraint claim.

Thus, Plaintiff contends that his statements regarding the code violations on the Celotex

property was a protected activity, and that the actions taken against him by Defendant Persing in the April 9, 2013 Memo, in response to his statements constituted unlawful prior restraint banning him from making his protected speech. Both Plaintiff and Defendants cite to *Pickering v. Board of Education*, 391 U.S. 563 (1968). Plaintiff argues that the comments he made, as an elected official, about the Celotex property is the type of activity that constitutes protected activity under any formulation of the *Pickering* framework.

In order to proceed on his First Amendment retaliation claim under §1983, Plaintiff must show that: (1) Plaintiff engaged in activity protected by the First Amendment; (2) the government responded with retaliatory action sufficient to deter a person of ordinary firmness from exercising his or her rights; and (3) the protected activity was the cause of the retaliatory action. *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007); *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir.2006).

Sepcifically, in *Mincy v. Chmielewski*, 2007 WL 707344, *5-*6 (M.D. Pa.), the Court stated:

> Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. *See Allah v. Seiverling,* 229 F.3d 220, 224-25 (3d Cir.2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn,* 241 F.3d 330 (3d Cir.2001)(quoting *Allah,* 229 F.3d at 225).
>
> "As a threshold matter, a [plaintiff] in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333; *see also, Jerry v. Williamson,* 2006 WL 3741840, 1 (3d Cir.2006).

In *O'Connell v. Sobina,* 2008 WL 144199, *11 (W.D. Pa.), the Court stated "merely

alleging the fact of retaliation is insufficient."

The *O'Connell* Court also stated:

> If the plaintiff proves these three elements, the burden
> shifts to the state actor to prove that it would have taken the
> same action without the unconstitutional factors. *Mt. Healthy*,
> 429 U.S. at 287.

*Id.; see also Fortune v. Basemore*, 2008 WL 4525373, *4-*5 (W. D. Pa.)("It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution."); *Sims v. Piazza*, 2009 WL 3147800, *24 (M.D. Pa.)(citing *Rauser v. Horn,* 241 F.3d 333-34 (3d Cir.2001)).

Thus, Plaintiff must show that the alleged retaliatory conduct by Defendant Persing, *i.e.,* "Plaintiff was subjected to an illegal investigation by Defendant Persing and to a gag order," was related to him engaging in constitutionally-protected conduct, *i.e.*, "expressing his opinions on the Celotex property." (Doc. 8, p. 9).

In *Alexander v. Forr*, 2006 WL 2796412 at *22 (M.D. Pa.), the Court stated:

> [I]n establishing the elements of a First Amendment claim of retaliation,
> a plaintiff must come forward with more than "general attacks" upon
> the defendant's motivations and must produce "affirmative evidence"
> of retaliation from which a jury could find that the plaintiff had carried
> his burden of proving the requisite motive. *Crawford-El v. Britton,* 523 U.S.
> 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (internal citations
> omitted).

Moreover, as the *Mincy* Court stated, to succeed on a First Amendment retaliation claim, a Plaintiff must show that the action by state officials was sufficiently "adverse," that is "they would be 'sufficient to deter a person of ordinary firmness from exercising his First Amendment

rights.'"   2007 WL 707344,*6.

It is not disputed that Plaintiff, as an elected Sunbury City Council member,  was a public official during all relevant times of this case.   In *Cindrich v. Fisher*, 341 Fed. Appx. 780, 786 (3d Cir. 2009), the Court stated:

> "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey,* 250 F.3d 188, 194 (3d Cir.2001). To prevail on a First Amendment retaliation claim, a public employee must first show that her activity was protected by the First Amendment. This is an issue of law. To warrant First Amendment protection, an employee must speak "as a citizen upon matters of public concern," not "as an employee upon matters only of personal interest." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see Sanguigni v. Pittsburgh Bd. of Pub. Educ.,* 968 F.2d 393, 399-400 (3d Cir.1992). In *Garcetti,* the Court clarified that, even if an employee's speech touches on a matter of public concern, it is not protected speech "as a citizen" if it was made pursuant to the employee's official duties. 547 U.S. at 421, 126 S.Ct. 1951; *see Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir.2009); *Foraker v. Chaffinch,* 501 F.3d 231, 239 (3d Cir.2007); *Hill v. Borough of Kutztown,* 455 F.3d 225, 242 (3d Cir.2006). It may, of course, be protected by whistleblower or employment discrimination statutes.

The Court in *Wise v. PA Dept. of Transp.*, 2010 WL 3809858, *7-*8 (W.D. Pa. 9-23-10), further elaborated as follows:

> In *Connick v. Meyers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court acknowledged the government's interest in regulating speech of its employees in order to promote "efficiency and integrity in the discharge of official duties, and [in maintaining] proper discipline in the public service." *Connick,* 461 U.S. at 150-51. Given the significant competing interests, courts must balance the public employee's constitutionally protected interest to speak about matters of public concern against the interests of the government employer. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
>
> To determine whether a public employee's protected speech outweighs the government's interest in regulating such speech, the Court of Appeals

for the Third Circuit adheres to a three-part balancing test: (1) the employee must show his speech was constitutionally protected; (2) the plaintiff must show the protected activity was a substantial or motivating factor in the alleged retaliatory action; and (3) the defendant may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the same retaliatory action would have been taken absent the protected conduct. *Watters v. City of Phila.,* 55 F.3d 886, 892 (3d Cir.1995).

Whether the speech was constitutionally protected turns on two requirements. The speech must relate to a matter of public concern. *Watters,* 55 F.3d t 892. Determining whether speech is a matter of public concern is a question of law which requires examination of the record in total-considering the content, form, and context of the speech. *See Connick,* 461 U.S. at 147-48 n. 7. Public concerns relate to any matter of political, social, or other concern to the community. *Brennan v. Norton,* 350 F.3d 399, 412 (3d Cir.2003). Speech involving matters of public concern must enrich or provide some value to the community. *Id.* at 413. Furthermore, speech of a purely personal nature will not qualify as a matter of public concern. *Connick,* 461 U.S. at 147; *Brennan,* 350 F.3d at 412. The Supreme Court has recognized speech motivated by a private concern may qualify as protected speech if it also addresses a matter of public concern. *Rankin,* 483 U.S. at 387 n. 11. If the speech related to a matter of public concern, the plaintiff must show the public interest advanced by the speech was not outweighed by any injury the speech could cause to the interest of the state employer in promoting the efficiency of public services. *Watters,* 55 F.3d at 892; *Waters v. Churchill,* 511 U.S. 661, 686, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994).

The second prong is composed of two separate elements. *Wardle v. Cnty. of Montgomery,* No. 05-3808, 2006 WL 2171976, at *6 (E.D.Pa. July 28, 2006). First, the threshold deterrence test requires the fact-finder to determine the alleged retaliatory action was punitive, such that it would deter a person of ordinary firmness from engaging in protected speech. *See McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006); *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000); *Wardle,* 2006 WL 2171976, at *6. Second, the fact-finder must be persuaded a causal connection exists between the protected speech and the alleged punitive action. *Wardle,* 2006 WL 2171976, at *6; *see McKee,* 436 F.3d at 169-71. The alleged retaliation must be more than de minimis. *McKee,* 436 F.3d at 170. The Supreme Court noted that failing to hold a birthday party for a public employee as punishment for exercising protected speech could be considered a retaliatory act for purposes

> of satisfying the second prong. *Ratan,* 497 U.S. at 76 n. 8 (citing *Ratan v. Republican Party of Illinois,* 868 F.2d 943, 954 n. 4 (7th Cir.1989)). The Court of Appeals for the Third Circuit has acknowledged acts which are de minimis individually may be sufficiently actionable when viewed as a whole. *Suppan,* 203 F.3d at 235.

*See also Schlarp v. Dern*, 610 F. Supp. 2d 450, 464-65 (W.D. Pa. 2009).

Further, Plaintiff must "identify specific matters of public concern addressed by specific speech." *Cindrich*, 341 Fed. Appx. at 787. In *Cindrich*, the Court relying on *Connick,* stated that the Supreme Court separated "speech on matters of public concern from speech relating to the employee's private interests." *Id*. In *Schlarp v. Dern*, 610 F. Supp. 2d at 465, the Court stated that the "'as a citizen' inquiry presents a mixed question of law and fact. The 'public concern' and 'balancing tests' present questions of law for the court to decide." (Citations omitted).

In *Beckinger v. Twp. of Elizabeth*, 697 F. Supp. 2d 610, 627 (W.D. Pa. 2010), the Court stated:

> In *Garcetti [Garcetti v. Cebalos*, 547 U.S. 410 (2006)*],* the Supreme Court clarified the standard that a court should use to determine whether speech of a public employee is protected under the First Amendment. First the court must determine whether the employee spoke both (1) as a citizen; and (2) on a matter of public concern. *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951 (citing *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731, 88 S.Ct. 1731). If the answer to either question is no, the employee has no First Amendment claim. *Id.* If the answer to both questions is yes, then the possibility of a First Amendment claim arises. *Id.* The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Id.* "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.* The Court in *Garcetti* made clear that speech made "pursuant to official duties" does not warrant the constitutional protection of speech made pursuant to an individual's status "as a citizen." *Id.* at 421, 126 S.Ct. 1951.Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created. *Id.* at 421-22, 126 S.Ct. 19.

In *Wise*, the Court noted:

> In *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), the Supreme Court held even when a public employee's speech relates to a matter of public concern, the speech may not be constitutionally protected if it was made in furtherance of the public employee's official duties. *Id.* at 1960 ("We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

2010 WL 3809858, *9 n. 2.

Recently, in *Borough of Duryea, Pa. v. Guarnieri*, __U.S..__, 131 S.Ct. 2488, 2011 WL 2437008,

*5 (June 20, 2011), the Supreme Court stated:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Ibid.* Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).
>
> This framework "reconcile[s] the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission." *San Diego v. Roe,* 543 U.S. 77, 82, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) *(per curiam)*. There are some rights and freedoms so fundamental to liberty that they cannot be bargained away in a contract for public employment. "Our responsibility is to ensure that citizens are not deprived of [these] fundamental rights by virtue

of working for the government." *Connick, supra,* at 147; *see also Keyishian v. Board of Regents of Univ. of State of N. Y.,* 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Nevertheless, a citizen who accepts public employment "must accept certain limitations on his or her freedom." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The government has a substantial interest in ensuring that all of its operations are efficient and effective. That interest may require broad authority to supervise the conduct of public employees. "When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." *Waters v. Churchill,* 511 U.S. 661, 675, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion). Restraints are justified by the consensual nature of the employment relationship and by the unique nature of the government's interest.

In *Karchnak v. Swatara Twp.*, 2009 WL 2139280, *15 (M.D. Pa. 7-10-09), the Court stated, "[i]t is clear from [*Reilly v. City of Atlantic City*, 532 F. 3d 216 (2008)] that where a claimant's speech relates to 'specialized knowledge' or 'experience' acquired through the claimant's job that speech falls within the claimant's official duties, and is thus not protected under *Garcetti*."  The *Karchnak* Court also stated:

To meet the first prong of the *prima facie* case for retaliation, a statement made by a government employee is protected when: (1) is made by the employee in her capacity as a citizen; (2) the statement involved a matter of public concern; and (3) the government did not have an adequate justification for treating the speaker differently than a member of the general public. *Hill,* 455 F.3d at 242. The landscape for public employees making First Amendment retaliation claims has been significantly altered since the United States Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). As the United States Court of Appeal for the Third Circuit recently observed, *"Garcetti* simply 'narrowed the Court's jurisprudence in the area of employee speech' by further restricting the speech activity that is protected." *Reilly v. City of Atlantic City,* 532 F.3d 216, 228 (3d Cir.2008) (*quoting Foraker v. Chaffinch,* 501 F.3d 231, 241 (3d Cir.2007)). After *Garcetti,* a court analyzing a public employee's First Amendment retaliation claims must first consider whether the employee's speech is made pursuant to the employee's official duties. "[T]he First Amendment does not prohibit managerial discipline based on an employee's expressions

made pursuant to official responsibilities." *Garcetti,* 547 U.S. at 424.

*Id.,* * 6.

> In *Moore v. Darlington Twp.*, 690 F. Supp. 2d 378, 388 (W.D. Pa. 2010), the Court stated:

> As far as speech, in order to pass the first step of the inquiry, Plaintiff must show that he "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). To do so, he must navigate between the precedential Scylla and Charybdis of *Connick* and *Garcetti* by showing both that his speech was not on a matter of purely personal interest, *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and that it was not made pursuant to his official duties, (*Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).

"The standard for guiding this inquiry is whether the speech in question was made pursuant to the practically understood or expected duties of a Plaintiff's employment." *Id.* at 389. "An employee's speech involves a matter of public concern if it is fairly related to political, social, or other community concerns." *Eddy v. Corbett*, 2009 WL 2982643, *4 (W.D. Pa. 9-14-09)(citation omitted), affirmed 2010 WL 1999017, 381 Fed.Appx. 237 (3d Cir. 2010)(Non-Precedential).

As stated, Plaintiff bases his retaliation claim on Defendant Persing's April 9, 2013 decision, one day after Plaintiff made his comments at a public meeting about code violations at the Celotex property, to conduct an investigation regarding the Celotex property and a time-line was to when the Celotex building was demolished and when Moran Industries purchased the property. (See Doc. 4-1). We agree with Defendants that Plaintiff's comments about code violations at the Celotex property made at the April 8, 2013, public meeting were made pursuant to Plaintiff's official duties as a Sunbury City Councilman. (Doc. 7, p. 11). As Defendants point out, "Plaintiff was speaking as a councilman and not as a citizen for First Amendment purposes" and that "the sole purposes of [Defendant Persing's] investigation was

to address the accusations and misinformation regarding the Celotex property." (*Id.*). Based on the allegations of Plaintiff's Amended Complaint detailed above and based on the above case law, we concur with Defendants. We find that Plaintiff's April 8, 2013, comments about the Celotex property were made pursuant to his official duties as a Sunbury City Councilman. Thus, we will recommend that Plaintiff's First Amendment retaliation claim under §1983 be dismissed. "A Plaintiff cannot prevail in an action brought under §1983 without establishing an underlying violation of a federally protected right." *Beckinger v. Township of Elizabeth*, 697 F.Supp.2d 610, 632 (W.D. Pa. 2010)(citation omitted).

Defendants also maintain that the Court should dismiss Plaintiff's First Amendment prior restraint claim against Defendant Persing since plaintiff was speaking as a public official and the government may impose reasonable restrictions on the time, place and manner of protected speech. (Doc. 7, p. 12).

The Court in *Stilp v. Contino*, 629 F.supp.2d 449, 458 stated, "[g]overnment restrictions on speech based on its content are 'presumptively invalid' and subject to strict scrutiny."(citations omitted). "Strict scrutiny requires that the contested speech restriction is 'narrowly tailored to serve a compelling government interest.'" *Id*.(citations omitted). In *American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 (3d Cir. 2003), the Third Circuit Court stated that "[s]trict scrutiny requires that a statute (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least restrictive means of advancing that interest." (Citation omitted). Thus, "prior restraints [on speech] are generally presumed unconstitutional". *U.S. v. Bell*, 414 F.3d 474, 478 (3d Cir. 2005)(citation omitted). "Prior restraints, however, are not unconstitutional *per se*, and may be permissible depending on the type of speech at issue." *Id*.(citations omitted).

Since we have found that Plaintiff's statements at the April 8, 2013 public meeting about the

Celotex property were made pursuant to his official duties as a councilman, we find that Defendant Persing's April 9, 2013 Memo restraining discussion about the property until the investigation regarding the property was completed applied to speech that was not protected by the First Amendment. *See Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 383 (7th Cir. 2009)(Court held that government employer's directive which restrained speech of public employees "is not an unlawful prior restraint because it does not apply to speech protected by the First Amendment."). Thus, since the restraint on speech regarding the Celotex property imposed by Defendant Persing until the investigation regarding the property was completed related only to speech that Plaintiff would be making pursuant to his official duties the restraint was not an unlawful prior restraint.

As discussed above, we have concurred with Defendants that Plaintiff's comments about code violations at the Celotex property were made pursuant to his official duties and that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. at 421. We also agree with Defendants that Persing's April 9, 2013 Memo shows that Persing only stated that no discussion of the information gathered about the Celotex property from the investigation he ordered will be allowed "until we have established the time-line and release the information to city council." (Doc. 4-1). As such, we find that Defendant Persing's ban on discussing the information gathered regarding the investigation he ordered into the Celotex property until all the facts and time-lines were ascertained and until the information was released to city council, is not an unconstitutional prior restraint on Plaintiff's speech since Plaintiff's April 8, 2013 comments about the property were not constitutionally protected and Persing only imposed reasonable restrictions on the time for discussing the Celotex property.

Therefore, we will recommend that Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation and prior restraint claims (Count III) be granted, and that Plaintiff's First Amendment claims be dismissed with prejudice. Based on the above detailed analysis, we find futility in allowing Plaintiff to amend his Amended Complaint regarding First Amendment claims against Defendant Persing. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004).

Since there will be no further federal claims in this case if the Court dismisses Count III of Plaintiff's Amended Complaint, we will recommend that the Court decline to exercise pendent jurisdiction over Plaintiff 's remaining state law claims against Defendants contained in Counts I and II of his Amended Complaint. Thus, with respect to Plaintiff's state law PSA, Third Class City Code and RTKL claims, Counts I & II, since Plaintiff conceded to the dismissal his federal claim in Count IV and since we shall recommend that Plaintiff's remaining federal claim over which this Court has original jurisdiction (*i.e.*, Count III, First Amendment claims under §1983) be dismissed with prejudice, we shall also recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendants. 28 U.S.C. § 1367(c)(3); *see also Verdecchia v. Prozan,* 274 F.Supp.2d 712, 728 (W.D. Pa. 2003); *Beckinger v. Township of Elizabeth*, 697 F.Supp.2d 610, 632 (W.D. Pa. 2010).

Accordingly, we will recommend that Defendants' Motion to Dismiss **(Doc. 5)** Plaintiff's Amended Complaint be granted as to Plaintiff's remaining federal claims (Count III) and, that the Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts I & II) and remand them to the Court of Common Pleas of Northumberland County.

## IV.     RECOMMENDATION.

Based on the above, it is respectfully recommended as follows:

1. Defendants' Motion to Dismiss **(Doc. 5)** be granted with respect to Count IV of Plaintiff's Amended Complaint (Doc. 4) and with respect to Plaintiff's claims under the Pennsylvania Constitution and, that the Court dismiss Count IV and the claims under the Pennsylvania Constitution with prejudice.

2. Plaintiff's First Amendment claims under §1983 in Count III seeking money damages against Defendant Persing in his official capacity (Doc. 4, p. 8) be dismissed with prejudice.

3. Plaintiff's request for declaratory relief against Defendant Persing in his First Amendment claims raised in Count III of his Amended Complaint be dismissed with prejudice.

4. Defendants' Motion to Dismiss **(Doc. 5)** be granted with respect Plaintiff's First Amendment claims under §1983 in Count III of his Amended Complaint against Defendant Persing, and that these claims be dismissed with prejudice.

5. The Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, Counts I & II of his Amended Complaint, and remand them to the Court of Common Pleas of Northumberland County.

6. The Court close this case.


       **s/ Thomas M. Blewitt**
       **THOMAS M. BLEWITT**
       **United States Magistrate Judge**

**Dated: September 25, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH BARTELLO,             :      CIVIL ACTION NO. 4:13-CV-1340
                                :
          Plaintiff       :      (Judge Brann)
                                :
          v.           :      (Magistrate Judge Blewitt)
                                :
CITY OF SUNBURY and     :
DAVID PERSING,          :
                                :
          Defendants   : 

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **September 25, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where  required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may

constitute a waiver of any appellate rights.



**s/Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**



**Dated: September 25, 2013**